## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOHN GRIFFIN**                                    **CIVIL ACTION**

**VERSUS**                                          **NO: 19-9793**

**CHEMBULK MARITIME ET AL.**                        **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 21). For the following reasons, the Motion is **GRANTED IN PART**.

## BACKGROUND

Plaintiff John Griffin has worked as a tankerman for Westlake Chemical ("Westlake") since 2008. On June 25, 2017, he alleges that he was injured while working aboard the M/T CHEMBULK ULSAN, which was docked at Westlake's Lake Charles facility. The CHEMBULK ULSAN is owned and operated by Defendants Chembulk Maritime USA, LLC and Chembulk Ocean Transport, LLC. Plaintiff alleges that while working aboard the CHEMBULK ULSAN he stepped into an unmarked hole in the grating and injured his shoulder when he reached up to grab a hose to prevent himself from falling to

1

the deck. Plaintiff alleges that Defendants' negligence is responsible for his injury and brings claims under 33 U.S.C. § 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA"). Defendants have moved for summary judgment, arguing that Plaintiff cannot succeed on his claim.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

It is undisputed that Plaintiff is a longshoreman whose claims fall under § 905(b) of the LHWCA. Under 33 U.S.C. § 905(b) of the LHWCA, an injured worker may bring a claim against a vessel owner for vessel negligence. At the outset, Defendants argue that Plaintiff cannot succeed on his claim under § 905(b) because it is an impermissible claim for a design defect. It is undisputed that the gap into which Plaintiff stepped has existed since the construction of the vessel. Defendants suggest that Plaintiff will argue that the construction of the area of the gap was unsafe in construction and design.[9] "A claim for damages from a design defect, if any, is essentially a claim for unseaworthiness, one which Congress specifically eliminated in the LHWCA's

---

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] Plaintiff did not address this argument.

1972 amendments."[10] Indeed § 905(b) states that "liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time injury occurred."[11] Accordingly, Defendants are correct that Plaintiff cannot succeed on a claim under § 905(b) premised on a design defect.

Plaintiff also argues, however, that Defendants were negligent in failing to fix the gap or warn him of the gap prior to beginning his work. In *Scindia Stream Navigation Co. v. De Los Santos*, the Supreme Court held that a vessel owner owes three duties to a longshoreman: (1) the duty to turn over a reasonably safe vessel, (2) the duty to protect against hazards if the vessel is left in the owner's active control, and (3) the duty to intervene to prevent use of an unsafe practice if the vessel owner is aware that it is being undertaken.[12] The Court held that the vessel owner has the duty to exercise due care under the circumstances.[13] Defendants argue that the undisputed facts show that they did not breach any duty to Plaintiff.

a. *Turnover Duty*

Under the first duty—the turnover duty—the vessel owner has two responsibilities: (1) to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced [contractor] will be able by the exercise of reasonable care to carry on its [ ] operations with reasonable safety to persons and property" and (2) to alert the

---

[10] Ryan-Walsh, Inc. v. Martima Aragua, S.A., No. 92-3662, 1994 WL 247217, at *4 (E.D. La. June 2, 1994).

[11] 33 U.S.C. § 905(b).

[12] 451 U.S. 156, 167–78 (1981).

[13] *Id.* at 166–67.

contractor of "any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care."[14] The duty to warn does not, however, include a duty to warn of dangers that are (1) open and obvious or (2) that a reasonably competent stevedore should anticipate encountering.[15] "The duty attaches only to latent hazards, defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work."[16]

Defendants argue that they did not breach the turnover duty where the alleged hazard—a gap in the grating—was open and obvious. The gap, which was approximately one foot by six inches, was next to a manifold where Plaintiff was working to disconnect a hose that had been used to transfer caustic chemical cargo. Defendants point out that both Plaintiff's co-worker, Ulric Davis, and supervisor, Kirby Leonard, testified that they had no problem seeing the hole when they looked down at it. In addition, Defendants argue that Plaintiff and Davis performed work in the same area earlier in the day without incident. Defendants argue that a reasonably competent tankerman would have seen the hole and avoided it.

In response, Plaintiff points out that no one at Westlake, including Davis, Leonard, or Plaintiff, saw or noticed the hole prior to Plaintiff's injury. Leonard testified that the gap was an "unusual condition" and could not recall seeing a similar gap on any other tanker upon which he had worked. In

---

[14] *Id.*

[15] Kirksey v. Tonghai Mar., 535 F.3d 388, 392 (5th Cir. 2008).

[16] Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 105 (1994).

5

addition, there were not similar gaps around several of the other manifolds on the CHEMBULK ULSAN. Plaintiff also testified that the gap was difficult to see because it was dark in the area of the manifold. Plaintiff argues that these facts create a material issue of fact as to whether the gap was an open and obvious condition. This Court agrees.

In *Manson Gulf, L.L.C v. Modern American Recycling Service, Inc.*, a longshoreman was killed when he stepped through an unmarked hole on a decommissioned oil platform and fell to the deck of a barge below.[17] The holes were two-feet-by-two-feet and had been cut in the platform's grating so that it could be lifted onto the barge.[18] The longshoreman's surviving spouse sought damages from the owner of the platform and the charterer of the barge under the LHWCA.[19] The district court granted summary judgment to the defendants, holding that the hole was both open and obvious and to be anticipated by a competent stevedore.[20] The Fifth Circuit reversed, holding that there was a material issue of fact regarding whether the hole was open and obvious.[21] The court pointed to evidence in the record that the hole was not easily seen because the grating could "play tricks on your eyes;" that the longshoreman's co-worker did not notice the hole until after the fall; and that holes of this kind are typically covered or marked.[22] The court held that this

---

[17] 878 F.3d 130, 133 (5th Cir. 2017).
[18] *Id.*
[19] *Id.*
[20] *Id.* at 135.
[21] *Id.*
[22] *Id.* at 136.

6

evidence supported the notion that the hole was a hidden hazard that a stevedore would not anticipate.[23]

Here too, there is evidence suggesting that the hole into which Plaintiff stepped was a hidden hazard. Just as in *Manson*, Plaintiff presents evidence that the hole may have been difficult to see, was not noticed until after the accident, and was not typically seen on similar vessels. Accordingly, there is a material issue of fact regarding whether the hole was open and obvious, and summary judgment on Plaintiff's claim for breach of the turnover duty is inappropriate.

### b. Active Control Duty

Next, *Scindia* states that a vessel owner may be held liable if it actively involves itself in the contractor's operations and is negligent in harming a longshoreman.[24] Defendants argue that the active control duty is not implicated here where the vessel's crew was not actively involved in the Westlake tankermen's work. Plaintiff counters that the active control duty *is* implicated because the vessel's crew remained on board the vessel working in the cargo area while the tankermen performed their work.

The Fifth Circuit has recognized active control as "being akin to operational control at the time of the activities in question."[25] "To determine whether an area is in the active control of the vessel owner, this court generally considers whether the area in question is within the contractor's work area and whether the work area has been 'turned over' to the contractor."[26] It is

---

[23] *Id.*
[24] *Scindia Steam Nav. Co.*, 451 U.S. at 167.
[25] Fontenot v. McCall's Boat Rentals, Inc., 227 F. App'x 397, 403 (5th Cir. 2007).
[26] *Id.*

undisputed that the hole into which Plaintiff fell was directly beneath the manifold from which Plaintiff and Davis were tasked with disconnecting a hose used for the transfer of chemical cargo. It is also undisputed that none of the vessel's crewmembers assisted or directed Plaintiff and Davis in this work. Accordingly, Plaintiff has not presented any evidence suggesting that Defendants were in operational control of the area where he was injured. Plaintiff cannot therefore succeed on a claim that Defendants breached their active control duty, and summary judgment on this claim is granted.

### c. Duty to Intervene

Finally, *Scindia* requires that a vessel owner intervene in the contractor's operations if it has actual knowledge of a danger that it anticipates the contractor cannot or will not correct.[27] Defendants argue that this duty is not implicated because the gap did not arise during Westlake's work on the vessel. It is undisputed that the gap has existed since the time of the vessel's construction. The Fifth Circuit has indicated that a vessel owner has a duty to intervene "when it knows of an unreasonably dangerous condition *that has developed during the course of the stevedoring operations.*"[28] Indeed, a dangerous condition that predates the stevedore's operations implicates the turnover duty.[29] Plaintiff has not cited to any law to the contrary. Accordingly, Plaintiff's claim for breach of the duty to intervene is dismissed.

---

[27] *Scindia Steam Nav. Co.*, 451 U.S. at 178.
[28] *Fontenot*, 227 F. App'x at 402–03 (emphasis added).
[29] Fontenot v. United States, 89 F.3d 205, 207 (5th Cir. 1996) ("The trio of duties set forth in *Scindia*, now a litany, include: (1) a 'turnover duty' looking to the condition of the vessel at the time the stevedore or repair company takes over.").

8

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion is **GRANTED IN PART**. Plaintiff's claims for a design defect, breach of the active control duty, and breach of the duty to intervene are **DISMISSED WITH PREJUDICE**. Only Plaintiff's claim for Defendants' breach of the turnover duty remains.

New Orleans, Louisiana this 10th day of November, 2020.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

9